————o————

DAVID S. STEWART, Plaintiff in Error, *vs.* ROBERT WOOD, *et al.*, Defendants in Error.

1. *Vendee's lien for purchase money paid against land after transfer by vendor.* —Money paid for land before conveyance is a charge upon it in the hands of the vendor and of his grantee with notice, and the vendee may have judgment for the purchase money.

2. *Land, sale of—Purchase price paid before transfer of title—Re-sale by vendor, under direction of vendee—Vendee's lien.*—Where the vendor, after receipt of the purchase price, but before transfer of title, receives authority from the vendee to sell and convey to another, or to receive from him the entire purchase money, the vendee has no lien on the land for the purchase price paid by himself. But the mere power given by him to the vendor to sell, without more, does not carry with it the power either to make the deed or take the whole consideration paid. And where no further power is conferred, the vendee retains such lien against the land, notwithstanding sale and conveyance by the vendor, and his receipt of purchase money, the grantee having notice of the vendee's claim. And the rule is not affected by the fact that the vendor retains the legal title ; since he holds it merely in trust and cannot part with it except by the vendee's direction and consent.

*Error to Vernon County Circuit Court.*

*Boggess & Sloan, with Cravens,* for Plaintiff in Error.

I. The vendor held the legal title to the land in trust for the plaintiff. And Virgil C. Wood, having taken with knowledge of plaintiff's right, held subject to the same trusts. (Gibson vs. Lair, 37 Mo. 188 ; Mechanics Bank vs. Seton, 1 Pet. 299 ; 2 Mad. Ch. 126 ; Cordova vs. Hood, 17 Wal. 1 ; Majors vs. Buckley, 51 Mo. 227 ; 1 Mad. Ch. 364.)

II. Plaintiff having purchased and paid for the land, and Robert Wood having put it out of his power to convey title thereto, to plaintiff, the latter was entitled to a lien for the purchase money, not only against his immediate vendor, but also against all persons taking title thereto with knowledge of his rights. (2 Washb. Real Pr., [3rd Ed.] 93 ; Shirley vs. Shirley, 7 Blackf. 452 ; Blackman vs. Pennington, 8 B. Mon. 217 ; Rucker &c., vs. Abell, Ib. 566 ; 3 Pars. Cont. 278 ; 1 Sugd. Vend. 386 ; McCampbell vs. McCampbell, 5 Lit. 92 ; Gibson vs. Lair, 37 Mo. 188 ; Cordova vs. Hood, 17 Wal. 1 ; Rhodes vs. Outcalt, 48 Mo. 367 ; Majors vs. Buckley 51 Mo. 227 ; Blaisdell vs. Stevens, 16 Vt. 179 ; Stafford vs. Ballou, 17 Vt. 329 ; Booth vs. Barnum, 9 Cow. 286.)

III. Virgil C. Wood having knowledge that said plaintiff had an interest in the land, is therefore chargeable with knowledge of all the facts he might have learned on inquiry. (Cordova vs. Hood, 17 Wal. 1 ; Rhodes vs. Outcalt, 48 Mo. 367 ; Majors vs. Buckley, 51 Mo. 227 ; Blaisdell vs. Stevens, 16 Vt. 179 ; Stafford vs. Ballou, 17 Vt. 329 ; Booth vs. Barnum, 9 Conn. 286.)

IV. The letter of plaintiff to Robert Wood conferred no authority to receive the purchase money, and the law does not imply or raise such authority out of the naked power to sell. (Sugd. Vend. [7th Am. from 11th Lond. Ed.] marg. p. 47 ; 2 Pars. Cont. [3rd Ed.] p. 128 ; Hil. Vend. § 46 ; Johnson vs. McGruder, 15 Mo. 365.)

*Waldo P. Johnson,* for Defendants in Error.

Stewart, by his letter, authorized Robert Wood to sell the land for ten dollars per acre. And Virgil C. Wood bought the land

in good faith and paid for the same full, fair and valuable consideration.

The title to the land being invested in Robert Wood, the authority given by Stewart to sell carried with it the power to receive the money and to make the deed.    If any loss followed Stewart must bear it, as it occurred through his negligence. (See DeBaun vs. Atchison, 14 Mo. 543 ; Herm. Estop. p. 418, §§ 418, 419.)

An authority to sell and convey lands for cash confers on the attorney or agent the right to recover the purchase money. (Johnson vs. McGruder, 15 Mo. 365.)

Where a party who has a title bond to land, makes himself instrumental in causing another to purchase it from a third person, he will be estopped from setting up any claim to the land as against the purchaser. (Herm. Estop. p. 421, § 423.)

HOUGH, Judge, delivered the opinion of the court.

In November, 1859, the defendant, Robert Wood, sold to the plaintiff, Stewart, two hundred and five acres and a fraction of land, lying in the county of Bates, Missouri, for the sum of two thousand and fifty dollars.    Of this amount, Stewart paid at the date of sale one thousand dollars in cash, and executed his notes for the remainder, payable in one and two years, and received from Wood a bond for title.    In March, 1861, these notes were transferred by Wood to Chas. G. and P. B. Snyder, to whom they were paid by Stewart, in the spring of 1866.    On the 20th of October, 1865, Stewart, being then absent from Bates county, wrote to Robert Wood, requesting him to sell his farm for him, at ten dollars per acre, or as much more as he could get.    On the 20th day of April, 1866, Robert Wood sold the farm to his son, Virgil C. Wood, for $2,250 cash, received the entire purchase money, and being still possessed of the legal title, never having conveyed the same to Stewart in pursuance of his title bond, executed and delivered to his son a deed therefor.    Virgil C. Wood had full notice of the contract of sale between Stewart and his father, and knew of the transfer of the notes to Snyder, and

before he bought saw the letter directing his father to sell the land. Robert Wood never paid to Stewart the purchase money received by him from his son, and we do not find from the testimony that there was any ratification by Stewart of the act of Wood, in receiving the purchase money and executing a deed.

Plaintiff brought this suit to recover from Robert Wood the purchase money paid to him for the land, and to have the same declared a lien, and enforced as such against the land in the hands of Virgil C. Wood.

The circuit court gave the plaintiff judgment for the money, but refused to declare the same to be a lien on the land, and plaintiff has brought the case here by writ of error.

It is obvious that the right of the plaintiff to the relief sought by him must depend entirely upon the effect to be given to the authority conferred by him upon Robert Wood to sell his farm. Where money is paid by the vendee of land prematurely before conveyance, it is a charge on the estate in the hands of the vendor. (Adams Eq., 6. Am. ed., 284 ; 2 Washb. Real Prop., 3 ed., 93, and authorities cited ; 2 Sug. Vend., 7 Am. ed., 325 : 3 Pars. Cont., 6 ed., 277 ; Shirley vs. Shirley, 7 Blackf. 452 ; Wickman vs. Robinson, 14 Wis. 493 ; Rose vs. Watson, 10 House of Lords Cases, 672.)

And where a third party acquires the title to such land from the vendor, with notice of the rights of the vendee, the latter may obtain a judgment for the purchase money paid, and enforce his lien for the same against such purchaser. If, therefore, under the simple authority given to Robert Wood to sell, he had a right to receive the purchase money and convey the land, then the plaintiff has no standing in court. If, on the contrary, the authority to sell did not include the power to receive the purchase money and make the conveyance, we think the plaintiff is entitled to the relief sought.

The language employed by the plaintiff was : "Sell my farm for me at ten dollars per acre, or as much more as you can get."

We understand the general rule to be, that an agent employed to sell *real estate* has no authority, as such, to receive payment

of the purchase money. (1 Sug. Vend., 7 ed., 56 ; Hill. Vend. 38, § 46 ; 2 Pars. Cont., 6 ed., 615 ; Mynn vs. Joliffe, 1 Moody & Rob. 326 ; Johnson vs. McGruder, 15 Mo. 365.) An agent who was authorized to *contract for sale, sell and convey* lands, had, it has been held, an implied power to receive the purchase money. (Peck vs. Harriott, 6 Serg. & Rawle, 149.) And it was so held, for the reason that an agent who has power to *sell and convey* cannot make a voluntary conveyance ; and as the receipt of the purchase money was an intermediate and necessary act between the contract of sale and the conveyance, the power to receive it necessarily came within the general scope of an authority to convey, otherwise the conveyance would have been fraudulent.

There has been some question whether an agent who has the naked power to sell land, has any authority even to sign his principal's name to a contract in writing for the sale of such land, though the weight of authority is perhaps in favor of the power, on the ground that the power to sell includes the power to do whatever is, necessary to make the contract of sale valid and binding. (Pringle vs. Spaulding, 53 Barb. 17 ; *vide contra*, Duffy vs. Hobson, 40 Cal. 240.)

It was held, in the case of Yerby vs. Grisby (9 Leigh, 387), that the power to sell included the power to sign and do every act necessary to complete the contract. The contract in that case contained a receipt for that portion of the purchase money which was to be paid down, but this fact was not commented upon by the court. In the case of Johnson vs. McGruder (15 Mo. 365), the agent was authorized to sell the land and loan out the purchase money. Judge Scott said, that as the money could not have been loaned out without first receiving it, an authority to loan implied an assent to its receipt. In the case of Valentine vs. Piper (22 Pick. 85), the agent was authorized to sell the land either by private sale or by auction, and to dispose of the proceeds according to the future instructions of the constituent, but he did not, in express terms, authorize the agent to make a deed, and it was held to be the intent of the constituent to confer on

the agent authority to transfer the estate. It would be going far beyond any of these cases to hold that the power to receive the entire purchase money and make a conveyance can be inferred from the naked power to sell. And it can make no difference, in the case at bar, that Robert Wood already held the legal title and could, therefore, pass it without the aid of a power of attorney under seal. He held the legal title in trust for Stewart, and had no right to part with it, except by his direction or consent. As the power to convey was not distinctly and positively conferred, and as no words were employed from which it could be implied, it must be held that it did not exist. The power to receive the entire purchase money would, in the present case, have authorized the conveyance of the estate, but this power was not conferred, and there is nothing from which to imply it. Although Robert Wood may have had the power to execute in the name of Stewart, a valid and binding *contract for the sale* of the land, no such contract was ever made, and the rights claimed by Virgil C. Wood cannot be held to have been acquired by virtue or in pursuance of the execution of the power to sell conferred upon his father. The receipt of the purchase money and the conveyance of the land must therefore be treated as being without any authority whatever, and as having no more force and validity than if Stewart had never authorized him to sell the land, for the authority given was not authority for these acts.

Virgil Wood, then, having acquired the title to the land in question without authority of the plaintiff, and with notice of his rights, holds the same subject to the plaintiff's lien for the purchase money paid by him for said land, and the judgment of the circuit court will therefore be reversed, and the cause remanded with directions to the circuit court to enter up a decree in accordance with this opinion. The other judges concur.